```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION

RACHAEL KIDWELL,                }
                                }
     Plaintiff,                 }
                                }     CIVIL ACTION NO.
v.                              }     08-AR-1716-S
                                }
STAR 1, LLC, et al.,            }
                                }
     Defendants.                }
```

**MEMORANDUM OPINION**

Rachael Kidwell ("Kidwell") sues Star 1, LLC, and 3340, LLC, d/b/a Michael's Steak and Seafood (collectively "defendants"), her former employer and its successor, respectively, claiming that they committed multiple violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Alabama common law torts of negligent hiring and supervision, invasion of privacy, outrage, and assault and battery. Before the court is defendants' motion for summary judgment. For the reasons stated below, defendants' motion will be granted as to all but Kidwell's Title VII retaliation claim.

**FACTS**[1]

---

[1] Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties. Where there is a dispute, the facts are presented in the light most favorable to the non-moving party. "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)). Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing

There has been a substantial amount of confusion and disagreement between the parties about which entities are proper defendants in this case. The initial complaint named Star 1, LLC, and Michael's Steak and Seafood, LLC, as defendants. (Doc. 1). After an entry of default was taken and then set aside for both the named defendants, a new entity, 3340, LLC, d/b/a/ Michael's Steak and Seafood, answered Kidwell's complaint. (Doc. 13). In its answer, 3340, LLC, explained that Star 1, LLC, was the previous owner of Michael's Steak and Seafood, but that 3340, LLC, became the owner in January, 2008. (Doc. 13 at 1, Fn. 1). Both said LLCs are owned in equal shares by Rusty Creel ("Creel") and Cannon Prickett ("Prickett"), individuals not named as defendants in this action. Kidwell's entire term of employment with Michael's was during the period of time that Michael's was owned by Star 1, LLC. After Kidwell filed an amended complaint, this time naming Star 1, LLC, and 3340, LLC d/b/a Michael's Steak and Seafood as defendants, this court heard oral argument concerning the propriety of Star 1, LLC, as a defendant. (Doc. 15; Doc. 16). The parties having apparently agreed that Star 1, LLC, was a proper party, Star 1, LLC and 3340, LLC, d/b/a Michael's Steak and Seafood together filed an answer on December 30, 2008. (Doc. 18). In their answer, defendants

---

that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324, 106 S. Ct. at 2553. Conclusory allegations or legal conclusions are not enough. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

denied that Star 1, LLC currently does business or has any employees, and later argued that Star 1, LLC has "no interest in Michael's". (Doc. 15 at 2; Doc. 36 at 2). In response to defendants' Rule 56 motion, Kidwell argues that Star 1, LLC, has not been dissolved, and recently held assets. (Doc. 39 at 2).

It is clear to this court that Star 1, LLC, is a proper party to this action. In 2007, when Kidwell was employed, Star 1, LLC, did business as Michael's Steak and Seafood, and therefore it was Star 1, LLC, that employed Kidwell. As Kidwell points out, Kidwell's entire tenure as a Michael's employee was during the Star 1, LLC, ownership period, and the employee handbook used by Michael's general manager was a Star 1, LLC, handbook. (Doc. 39 at 2). Therefore, it seems clear that if any entity committed the alleged violations, it was Star 1, LLC. What is less clear is why 3340, LLC, remains a party to this action. Neither party has told the court that 3340, LLC, expressly assumed all liabilities of Star 1, LLC. This court does not believe that common ownership of the two LLCs or privity of contract between them necessarily exposes the non culpable party to joint and several liability. Having been inadequately informed about the entities relationships, this court will allow the one claim that survives defendants' Rule 56 motion to proceed against both named defendants, but will, by separate order, require the parties to show cause as to why the remaining claim against 3340, LLC, d/b/a Michael's Steak and Seafood, should

or should not be dismissed.

Kidwell began working for Michael's Steak and Seafood ("Michael's") in August, 2007. On August 31, 2007, Kidwell was involved in an incident with another Michael's employee, David Jezwald ("Jezwald"). According to Kidwell, Jezwald approached her and hit her "on the bottom". (Doc. 37-1 at 20). Kidwell walked away, and Jezwald followed her. *Id.* Jezwald then grabbed her from behind, around her waist, pushed his groin area into her buttocks, and bit her on the neck. *Id.* at 20-22. Kidwell said "ow", and immediately left the restaurant to contact her mother for advice. *Id.* Kidwell's mother suggested that she either contact management or tell Jezwald not to do it again. *Id.* Kidwell went to Jezwald and told him his actions were not appreciated. (Doc. 37-8 at 3). Jezweld stated that he was sorry and that he did not realize that he had offended her. *Id.* After her shift ended, Kidwell called Michael's general manager, Michael Bolling ("Bolling"), and reported the incident to him. (Doc. 37-1 at 22). The next day Kidwell provided Bolling and Creel with a written statement describing Jezwald's conduct. *Id.* at 24. Bolling and Creel then spoke to Jezwald about the incident. (Doc. 37-3 at 31). Jezwald denied that the incident occurred. *Id.* Following the incident, in an apparent attempt to minimize or discontinue contact between Kidwell and Jezwald, Kidwell's schedule was changed, resulting in her working more day shifts than she had previously worked. (Doc.

37-4 at 13). According to Kidwell, day shifts are significantly less lucrative than night shifts. There is a factual dispute as to whether Kidwell and Jezwald ever worked together after the August 31, 2007, incident, but it is undisputed that after that date no further harassing incidents were reported by Kidwell. On some date within a month of the complained of incident, Kidwell was either terminated or abandoned her job. Kidwell filed a Charge of Discrimination with the EEOC on October 3, 2007. After receiving notice of her right to sue, Kidwell instituted this action on September 17, 2008.

## DISCUSSION

**Title VII Sexual Harassment**

A plaintiff can establish a Title VII harassment claim in one of two ways: (1) by showing that a "tangible employment action" was taken, and such action was motivated by a proscribed form of discrimination, or, (2) by showing that a "hostile work environment" was created "by sexual harassment that is sufficiently severe or pervasive [so as] to alter the terms and conditions of work." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1300 (11th Cir. 2007). Kidwell does not allege that any adverse employment action was taken by management because of her gender or because of her membership in any other protected group. Therefore her Title VII discrimination claim is necessarily a "hostile work environment" claim, something she admits. *See* Doc. 39 at 43 ("This

is hostile work environment harassment.")

In assessing whether harassment is "severe or pervasive" enough to constitute a change in the terms and conditions of work, several factors must be considered, including "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1247-48 (11th Cir. 2004). In evaluating these factors, courts use a "totality of the circumstances approach, instead of requiring proof of each factor individually." *Id.* at 1248. An employer may escape liability for hostile work environment harassment if the employee failed to take prompt advantage of the employer's system for reporting and preventing harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 118 S.Ct. 2275, 2293 (1998).

Kidwell argues that Jezwald's actions on August 31, 2007, standing alone, constituted "severe and pervasive" harassment. (Doc. 39 at 43). However, recognizing that an isolated incident is not enough, Kidwell supplements her argument with testimony that a kitchen worker named Raul had previously whistled at her in a manner that was offensive, but that she never reported the whistles to management. (Doc. 37-1 pg. 9). Lane McMaster ("McMaster"), another Michael's employee, had previously complained to management about Raul making a sexually suggestive comment. (Doc. 37-6 pg. 7).

6

Kidwell claims that "Defendants took no action to prevent Raul from engaging in sexually offensive conduct and failed to protect Kidwell and McMaster," and that if Jezwald's conduct alone did not constitute "severe and pervasive" harassment, his conduct, coupled with Raul's, along with the defendants' alleged inaction, rose to the level of "severe and pervasive" harassment.

The complained of conduct, even when taken as a whole, does not constitute "severe and pervasive" harassment. Kidwell never complained about Raul's alleged whistling, thus defendants were never aware of it. Also, contrary to Kidwell's argument, management did, in fact, take action in attempts to protect McMaster from any further harassment from Raul. McMaster testified that after Raul made an offensive comment, she complained to the kitchen manager, who then spoke with Raul. (Doc. 37-6 at 7). McMaster also testified that she was never further harassed, and that she "was happy with the way it was handled." *Id.* at 8. Examining the evidence based on the factors from *Hulsey*, this court finds that the complained of conduct was infrequent, and although the one incident involving Jezwald was somewhat severe and humiliating, none of the alleged incidents greatly interfered generally with employees' work performance. Three incidents, one of which did not involve the plaintiff and another of which was never reported to management, do not constitute "frequent" harassment. While the incident with Jezwald was undoubtedly upsetting, weighed with the infrequency of

7

the alleged harassment and the relatively minor disruption of work performance, it does not rise to the level of "severe and pervasive" harassment. Therefore, Kidwell's claim of Title VII harassment cannot survive defendants' Rule 56 motion.

**Title VII Retaliation**

To make a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Courts construe the causal link element broadly, requiring only "'that the protected activity and the adverse action were not wholly unrelated.'" *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).

The fact that Kidwell engaged in a protected activity, namely, complaining to management about Jezwald's alleged harassment, is undisputed. Kidwell alleges that three adverse employment actions were taken as the result of her engaging in this protected activity: (1) that she was switched to less-lucrative day shifts, (2) that she was unjustly harassed about the appearance of her uniform, and (3) that she was terminated. (Doc. 39 at 49).

Defendants admit the causal connection regarding the shift

switching, stating that it was "part of the remedial action taken by Defendants to prevent Mr. Jezwald from working the same shift as Plaintiff," but claim that any shift-switching cannot constitute an adverse action because "she worked so few days after her complaint." (Doc. 43 at 4); (Doc. 36 at 21). There is conflicting testimony as to when Kidwell stopped working for Michael's. Defendants claim that Kidwell abandoned her job "[j]ust days after her complaint was made," and Kidwell claims that she was fired on September 28, 2007, almost a month after complaining about the Jezwald incident. (Doc. 36 at 6); (Doc. 39 at 41). There is a similar dispute over the magnitude of the schedule change that was made. Because of this conflicting testimony, it cannot be taken as fact at the Rule 56 stage that Kidwell "worked so few days" that the shift switching could not constitute an adverse employment action.

   The evidence concerning the reprimands for uniform appearance and the termination/abandonment dispute is in the same vein as the shift-switching evidence, that is, there is directly conflicting testimony as to whether the reprimands were made before or after the Jezwald incident and as to whether Kidwell abandoned her job or was terminated. Especially when no written employment records have been produced, these conflicting statements present the kind of factual disputes that cannot be resolved under Rule 56. To the extent that defendants have not admitted a causal connection

between the protected activity and the alleged adverse employment actions, the events' temporal proximity establishes such a connection for the purposes of Rule 56. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(citing *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)); *Shannon v. Potter*, 335 Fed. Appx. 21, 26 (11th Cir. 2009). Because Kidwell does not claim, and cannot claim, constructive discharge, she must prove actual termination.

**Negligent Hiring and Supervision**

Under Alabama law an employer can be held liable for negligently hiring and/or supervising an employee when the employer has "notice or knowledge, either actual or presumed, of the incompetency" of the employee. *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889. "Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence." *Big B, Inc v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993). Kidwell offers no evidence that would point to defendants having knowledge, either actual or constructive, of any propensities of the sort Kidwell complains of that Jezwald might have had before they hired him. Defendants' retention of Jezwald after the August 31, 2007, incident cannot be the basis for a

negligent retention claim when Jezwald denied the conduct and after management's meeting with Jezwald there were no further incidents of harassment. Kidwell's bald assertion that "Defendants were negligent and wanton in their conduct in hiring, training, supervision and retention of Jeswald," supported only by testimony concerning the August 31 incident, cannot survive a Rule 56 motion, and her claim of negligent hiring/supervision will be dismissed.

**Outrage and Invasion of Privacy**

For an employer to be held liable for the intentional torts of its employee, a plaintiff must offer evidence "(1) that the agent's wrongful acts were committed in the line and scope fo the agent's employment; or (2) that the acts were committed in the furtherance of the business of the employer; or (3) that the employer participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992). "Alabama courts, as well as other courts, have held that sexual misconduct is personal to the employee and is outside the scope of employment," therefore, if Kidwell hopes to hold defendants' liable for Jezwald's conduct, she must prove authorization or ratification.

To prove authorization or ratification, a plaintiff must show "that the employer (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that

11

based upon this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that the employer failed to take adequate steps to remedy the situation." *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889 (Ala. 1995). Kidwell complained of Jezwald's alleged harassment directly to management. Therefore, it is undisputed that the first requirement, knowledge of the tortious conduct, is met. However, there is insufficient evidence to support a claim that defendants had knowledge of continuing tortious conduct and/or failed to take remedial action. Rather, the evidence points to the contrary. After defendants counseled Jezwald, there were no more complaints made about his conduct, and Kidwell does not allege any further incidents of harassment.  There is conflicting testimony concerning whether or not Kidwell and Jezwald were scheduled for the same shifts after the August 31 incident. Even if it is assumed that Kidwell and Jezwald were scheduled for the same shifts, that fact, without any evidence of further harassment, does not support knowledge of a continuing tort or a failure to take remedial action. Kidwell has failed to show grounds for imputing Jezwald's alleged intentional torts to defendants, and therefore her claims for outrage and invasion of privacy are due to be dismissed.

## CONCLUSION

Kidwell has failed to present evidence to support claims of Title VII sexual harassment, negligent hiring and supervision,

outrage, or invasion of privacy. Therefore, her complaint, insofar as it contains these claims, will be dismissed with prejudice by separate order. A dispute of material fact exists concerning Kidwell's claim of Title VII retaliation, and that single claim will survive defendants' Rule 56 motion.

DONE this 4th day of May, 2010.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE